IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMMI D. WRIGHT,                    :
                                    :
        Plaintiff,                  : 1:CV-00-1657
                                    :
    v.                              : (Judge Conner)
                                    :
BEULAH HADRICK,                     :
CHARLEEN SZABO, SCOTT               :
SHREVE and RAY KENT,                :
                                    :
        Defendants                  :

FILED
HARRISBURG, PA
SEP 2 7 2002
ANDREA, CLERK

### DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

This is a civil rights action brought by an employee of the Department of Veterans Affairs ("VA") against four supervisory or managerial employees of the same agency. Because plaintiff has failed to state a cause of action upon which relief may be granted, judgment should be entered in favor of defendants on the pleadings. In the alternative, because there are no material facts in dispute, summary judgment should be granted in favor of defendants.

### Procedural History

Plaintiff Sammi D. Wright filed her complaint on September 18, 2000. The complaint names as defendants Charleen Szabo, the Chief Executive Officer of the Lebanon VA Medical Center, Beulah Hadrick and Dr. Scott Shreve, two of plaintiff's supervisors at

1

the Medical Center, and Ray Kent, Human Resources Director at the Medical Center. It does not name the Department of Veterans Affairs, the Secretary of Veterans Affairs, or the United States.

In January of 2001, plaintiff Wright was discharged from her employment with the VA. On January 31, 2001, she filed an appeal of that action with the Merit Systems Protection Board. *See* Exhibit A hereto. She subsequently entered into a settlement agreement in that proceeding, and was reinstated with partial back pay. *See* Exhibit B. Neither her discharge nor her MSPB appeal, both of which occurred after this case was filed, are part of this action.

On June 1, 2001, defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment. By Memorandum and Order dated September 13, 2001, the Court granted defendants' motion in part and denied it in part. The Court dismissed plaintiff's claims based on deprivation of constitutional rights under the Thirteenth and Fourteenth Amendments and her claims based on state law intentional interference with contract. However, the Court denied defendants' motion with respect to plaintiff's First Amendment claim. The discovery period closed on September 13, 2002. Defendants now file their Motion for Judgment on the Pleadings or for Summary Judgment and brief in support thereof.

## Questions Presented

1. Whether judgment should be granted in favor of defendants because plaintiff has failed to state a claim on which relief may be granted.

   Suggested answer in the affirmative.

2. Whether summary judgment should be granted in favor of defendants because there are no disputed issues of material fact and the defendants are entitled to judgment as a matter of law.

   Suggested answer in the affirmative.

## Facts

For purposes of considering defendants' motion for judgment on the pleadings for failure to state a claim, the Court should accept as true the allegations of the complaint. "The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997).

The factual allegations of the complaint relating to plaintiff's First Amendment claim must be accepted as true only for purposes of deciding whether defendants are entitled to

3

judgment on the pleadings for failure to state a claim. Plaintiff alleges that "defendant has subjected the plaintiff to a litany of harassments, embarrassment and pretextual accusations designed to force her from her job and stop her complaints to Senator Arlen Specter." Complaint (Cpt.), ¶ 1. She alleges that "defendant Sazbo [sic] has directly participated in and ratified the misconduct of the other defendants even providing misleading information to Senator Arlen Specter about the plaintiff and her situation at the Medical Center." Cpt., ¶ 16. She claims that she "has also been retaliated against and harassed at an ever increasing rate because she complained about conditions for veterans and herself and sent information to Senator Arlen Specter." Cpt., ¶ 17. And finally, plaintiff alleges that "the harassment she was, and is, receiving was exacerbated unlawfully in violation of her 14th Amendment [sic] rights because she sent information to Senator Arlen Specter." Cpt., ¶ 29.

For purposes of considering defendants' Motion for Summary Judgment, the Court should consider the evidence submitted by the parties. Summary judgment is appropriate when supporting materials, such as affidavits and other documentation, show there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). In <u>Celotex</u>, the Court held that "Rule 56(e)... requires that the

4

non-moving party go beyond the pleadings by [his] own affidavits, or by 'depositions, answers to interrogatories and admissions on file', designate 'specific facts showing that there is a genuine issue for trial'". *Id.*, at 324. Additionally, an opposing party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex, 477 U.S. at 325.

The undisputed facts of record disclose that plaintiff Sammi Wright is employed as a social worker at the VA Medical Center in Lebanon, Pennsylvania. Cpt., ¶¶ 7, 12. In or about February, 2000, the program Ms. Wright worked in was moved from the "Metal [*sic*] Health and Behavioral Science area" to the "Extended Care Program." This move placed Ms. Wright under the supervision of defendants Beulah Hadrick and Scott Shreve. Cpt., ¶¶ 13, 14. In late March, 2000, Ms. Wright was docked eight hours of pay for being absent without leave. Deposition of Sammi D. Wright, pp. 116-17, and Exhibits 1 and 2 thereto (submitted herewith as Exhibit C). Thereafter, by letter dated April 8, 2000, plaintiff complained to Senator Arlen Specter about conditions for veterans and about her docked pay. Cpt., ¶17; Wright Deposition, pp. 11, 31; Wright Dep., Exh. 2 (Exh. C). Her docked pay was later restored. Cpt., ¶¶ 18, 26; Deposition of Beulah Hadrick, pp. 111-13, 115-16 (Exhibit D hereto); Wright Dep., pp. 116-17 (Exh.

5

C).

Plaintiff claimed in her complaint that she was "treated in a meanspirited, nasty, contentious way" by someone, and she was the only person at the VA Medical Center treated that way. Cpt., ¶ 20. She claimed that staff and third persons watched her and reported on her, and forced her to follow demeaning reporting procedures. Cpt., ¶ 21. However, she could not identify in her deposition any reporting or other requirements imposed on her which were not imposed on other social workers in her unit. Wright Dep., pp. 37-39, 41-42 (Exh. C).

Defendants, however, produced evidence that Ms. Wright received precisely the same instructions and directions that other staff received. Hadrick Dep., pp. 66, 69, 72-73, 173, 196 (Exh. D); Deposition of Raymer Kent, pp. 41-44 (Exh. E); Deposition of Dr. Scott Shreve, pp. 9-10, 31 (Exh. F). Further, they testified that Ms. Wright consistently refused to follow directions, refused to fulfill the duties of her position, and treated co-workers and supervisors rudely and disrespectfully. Hadrick Dep., pp. 36-60, 81-84, 168-177 (Exh. D); Kent Dep., pp. 36-39, 46-49 (Exh. E); Shreve Dep., pp. 6-11, 12-15, 18-22, 29-30, 45-46 (Exh. F). Plaintiff's supervisor testified that this poor performance and misconduct resulted in progressive disciplinary action. Hadrick Dep., pp. 90-98, 174-77 (Exh. D).

Although the only claim remaining in this case is

plaintiff's claim of retaliation for exercise of her First Amendment rights, Ms. Wright insisted at her deposition that the "retaliatory" conduct she suffered was based entirely on her race. Wright Dep., pp. 141-42, 149-52, 156-59 (Exh. C).

## Argument

### 1. Introduction

In her "Introductory Statement," plaintiff characterizes this complaint as follows:

> This is a civil rights complaint based upon allegations of intentional interference by the defendant Beulah Hadrick in the contractual relationship between the plaintiff, a social worker for the Veterans Administration, and her employer. The complaint also alleges 1st Amendment violations. The defendant has subjected the plaintiff to a litany of harassments, embarrassment and pretextual accusations to force her from her job and stop her complaints to Senator Arlen Specter.

Cpt., ¶ 1. In the jurisdictional section, plaintiff references 42 U.S.C. §§ 1981 and 1983. Cpt., ¶ 2. Later, plaintiff alleges that as a black person she has been treated in "an unjust, cruel, disparate fashion." Cpt., ¶ 15; see also ¶¶ 21, 24. Finally, in the unnumbered concluding paragraph, plaintiff demands relief for "deprivation of her rights under the 13th, 14th and 1st Amendment[s] pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983." Cpt., at 6.

In its September 13, 2001 Memorandum and Order, the Court dismissed all of plaintiff's claims except her First Amendment

7

claim. Thus, defendants will address only that claim in this brief.

2. **Defendants are entitled to judgment on the pleadings because the remainder of plaintiff's complaint fails to state a claim on which relief may be granted.**

Plaintiff Sammi Wright is and at all times relevant to this action has been an employee of the United States Department of Veterans Affairs. As a VA employee, Ms. Wright enjoys civil service protection. *See* 5 U.S.C. § 1101, *et seq*. In fact, when she was discharged in January, 2001, she availed herself of that protection, appealing her discharge to the Merit Systems Protection Board. *See* Exh B.

The United States Supreme Court has held that federal employees who enjoy the protections of the Civil Service Reform Act of 1978 cannot recover damages from supervisors for retaliation for exercising First Amendment rights. In Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404 (1983), the plaintiff brought a Bivens-type[1] action against his supervisor, seeking to recover damages for defamation and retaliation for exercise of his First Amendment rights. Holding that the plaintiff could not recover from the supervisor for such actions, the Court stated:

> Petitioner asks us to authorize a new nonstatutory damages remedy for federal employees whose First Amendment rights are violated by their superiors. Because such claims arise out of an employment

---

[1] Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91, S.Ct. 1999(1971).

8

> relationship that is governed by comprehensive
> procedural and substantive provisions giving meaningful
> remedies against the United States, we conclude that it
> would be inappropriate for us to supplement that
> regulatory scheme with a new judicial remedy.

462 U.S. at 368.

The Court examined the principles underlying recognition of causes of action for violations of constitutional rights, and traced the history of civil service protections. It then explained:

> In the ensuing years, repeated consideration of
> the conflicting interests involved in providing job
> security, protecting the right to speak freely, and
> maintaining discipline and efficiency in the federal
> workforce gave rise to additional legislation, various
> executive orders, and the promulgation of detailed
> regulations by the Civil Service Commission. Federal
> civil servants are now protected by an elaborate,
> comprehensive scheme that encompasses substantive
> provisions forbidding arbitrary action by supervisors
> and procedures - administrative and judicial - by which
> improper action may be redressed. They apply to a
> multitude of personnel decisions that are made daily by
> federal agencies. Constitutional challenges to agency
> action, such as the First Amendment claims raised by
> petitioner, are fully cognizable within this system.
> As the record in this case demonstrates, the
> Government's comprehensive scheme is costly to
> administer, but it provides meaningful remedies for
> employees who may have been unfairly disciplined for
> making critical comments about their agencies.

*Id.*, at 385. Here, plaintiff is claiming precisely what the petitioner in Bush claimed: that her superiors retaliated against her for exercising her First Amendment right of freedom of

9

speech.[2] The Supreme Court has very clearly held that federal employees, like Ms. Wright, may not recover damages from their superiors for violations of their First Amendment rights. Because plaintiff's First Amendment claim is the only claim remaining in this case, and because the Supreme Court has specifically found that no such claim is cognizable against a federal employee's superiors, defendants are entitled to judgment as a matter of law.

3. **Even if plaintiff had stated a cognizable cause of action, defendants would be entitled to summary judgment because the undisputed facts of record disclose that plaintiff did not suffer retaliation for exercise of First Amendment rights.**

Public employees who are not covered by a comprehensive statutory scheme may be able to assert First Amendment claims against their employers. The Supreme Court addressed the elements of a First Amendment claim in the non-federal public employment context in Mt. Healthy City School Dist. v. Doyle, 429 U.S. 286 (1977). In that context, a plaintiff asserting a First Amendment claim must first establish that he engaged in protected expression. Whether a public employee's expression is constitutionally protected depends on balancing the interests of the employee in free expression with the interests of the employer in promoting the efficiency of the public service it performs. Pickering v. Board of Ed., 391 U.S. 563, 88 S.Ct. 1731

---

[2] The right to petition members of Congress is specifically protected under the Civil Service Reform Act. 5 U.S.C. § 7211.

(1968). If the expression is protected, the employee then bears the burden of showing that the exercise of the constitutional right was a "motivating factor" in the adverse employment decision. Mt. Healthy, supra, at 287. At that point, the employer has the opportunity to show by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. Id. If it would have, then the employee's claim fails.

Here, the undisputed evidence reveals that Ms. Wright chronically disobeyed the orders of her supervisors, refused to account for her time, and was rude to and uncooperative with her co-workers. Hadrick Dep., pp. 36-60, 81-84, 168-77 (Exh. D); Kent Dep., pp. 36-39, 46-69 (Exh. E); Shreve Dep., pp. 6-11, 12-15, 18-22, 29-30, 45-46 (Exh. F). It also reveals that plaintiff was subjected to the same requirements applied to other employees. Hadrick Dep., pp. 66, 69, 72-73, 173, 196 (Exh. D); Kent Dep., pp. 42-44 (Exh. E); Shreve Dep., pp. 9-10, 31 (Exh. F). Plaintiff can point to no evidence to the contrary. Further, the undisputed evidence reveals that the main incident of "retaliation" she claims to have suffered, the docking of her pay, occurred before she wrote the letter to Senator Specter. Cpt., ¶ 17; Wright Dep., pp. 11, 31, and Exhibits 1, 2 thereto (Exh. C).

Finally, the evidence of record indicates that any actions

11

taken against plaintiff were related to her poor performance and not to her letter to Senator Specter. Shreve Dep., p. 33 (Exh F). Clearly, any adverse action plaintiff suffered during her tenure at the VA was the result of her own misconduct, and not the result of her exercise of First Amendment rights. Plaintiff can adduce no evidence to the contrary. Accordingly, defendants are entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, defendants respectfully request that the Court entire judgment in favor of the defendants.

>Respectfully submitted,
>
>THOMAS A. MARINO
>United States Attorney
>
>*[signature: Mary Catherine Frye]*
>
>MARY CATHERINE FRYE
>Assistant U.S. Attorney
>228 Walnut Street
>Harrisburg, PA 17108
>(717) 221-4482

Dated: September 27, 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMMI D. WRIGHT | : |
| | : No. 1:CV-00-1657 |
| Plaintiff, | : |
| | : (Judge Conner) |
| v. | : |
| | : |
| BEULAH HADRICK, | : |
| CHARLEEN SZABO, SCOTT | : |
| SHREVE and RAY KENT, | : |
| | : |
| Defendants. | : |

### CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 27th day of September, 2002, she served a copy of the attached

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR
JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelopes and contents in the United States Mail at Harrisburg, Pennsylvania to:

Don Bailey, Esquire
4311 N. 6th Street
Harrisburg, PA  17110

PHYLLIS M. MITCHELL
Supervisory Legal Assistant